## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BROOKS KUSHMAN P.C.,

     Plaintiff,                                  Case No. 15-12351

vs.                                            Hon. Gerald E. Rosen

CONTINENTAL CASUALTY
COMPANY,

     Defendant.

_____/

## OPINION AND ORDER GRANTING
## <u>DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE</u>

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       September 30, 2016

PRESENT:    Honorable Gerald E. Rosen
                 United States District Judge

## I. <u>INTRODUCTION</u>

In the present suit brought under this Court's diversity jurisdiction, the

Plaintiff law firm, Brooks Kushman P.C., seeks to collect attorney fees it incurred

while representing non-party Alternative Technology Solutions, Inc. ("Alternative")

in a lawsuit brought against Alternative in the U.S. District Court for the Central

District of California.  In accordance with the terms of a general commercial

liability policy issued to Alternative, the Defendant insurer, Continental Casualty

Company, agreed to provide a defense to Alternative in the California litigation,
subject to a reservation of Defendant's right to withdraw this defense in the event
that it determined that no such duty was owed under the policy.  According to
Plaintiff's complaint, when the Defendant insurer allegedly agreed to allow the
Plaintiff law firm to appear as counsel for Alternative in the California suit,
Defendant thereby assumed liability under various state-law theories for the fees
incurred by Plaintiff in representing Alternative, but Defendant allegedly has failed
to pay at least a portion of these fees.

Through the present motion filed on July 22, 2015, Defendant seeks the
dismissal of Plaintiff's complaint in its entirety under Fed. R. Civ. P. 12(b)(6),
arguing that Plaintiff has failed in various respects to identify and plead a viable
theory of recovery under which Defendant could be held liable to the Plaintiff law
firm for fees it incurred while representing Defendant's insured, Alternative.  Next,
in the event that the Court were to determine that Plaintiff's complaint is not subject
to dismissal, Defendant requests that this suit be transferred to the Central District
of California under 28 U.S.C. § 1404(a) as a more convenient forum, or that the
Court consider staying this action until a California state court resolves an insurance
coverage suit brought by Defendant against Alternative.

Defendant's motion has been fully briefed by the parties.  Having reviewed

2

the parties' briefs in support of and in opposition to Defendant's motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are adequately presented in these written submissions, and that oral argument would not assist in the resolution of this motion.  Accordingly, the Court will decide Defendant's motion "on the briefs."  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.  For the reasons set forth below, the Court holds that the allegations of Plaintiff's complaint fail to support any viable legal theory under which the Defendant insurer may be held liable for fees incurred by the Plaintiff firm in representing an insured party.[1]

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

In March of 2013, Epicor Software Corporation ("Epicor") brought suit against Alternative Technology Solutions, Inc. ("Alternative") and a number of other defendants in the U.S. District Court for the Central District of California (the "California Litigation").  Under the terms of a general commercial liability policy issued to Alternative (the "Policy"), Defendant Continental Casualty Company agreed to provide a defense to Alternative in the California Litigation, subject to a reservation of Defendant's right to withdraw from its defense of Alternative in the

---

[1]In light of this ruling, the Court need not address Defendant's request for a transfer of venue.

3

event that Defendant determined that the claims asserted by Epicor were not covered under the Policy.  (*See* Defendant's Motion, Ex. 1, 7/30/2013 Coverage Letter.)

As recognized in Defendant's letter to Alternative explaining the nature, extent, and limits of the coverage owed to Alternative under the Policy, once Defendant agreed to provide a defense subject to a reservation of rights, Alternative was authorized under California law to retain independent counsel, and Defendant, in turn, was obligated to pay the reasonable fees and costs incurred by this counsel in representing Alternative.  (*See id.* at 6.)  Alternative initially selected Clark Hill PLLC of Chicago, Illinois as this independent counsel, but on March 6, 2014, Alternative's coverage counsel, Eric R. Little, informed Defendant that Alternative had retained the Plaintiff law firm, Brooks Kushman P.C., to replace Clark Hill as Alternative's independent counsel in the California Litigation.  (*See* Complaint, Ex. A, 3/6/2014 Letter.)  Later that month, two attorneys from the Plaintiff firm entered their appearances on behalf of Alternative in the California Litigation, and on April 1, 2014, a representative of the Defendant insurer sent an e-mail to one of these attorneys, Mark A. Cantor, advising him of Defendant's billing rates, forwarding a copy of Defendant's billing and litigation guidelines, and asking Mr. Cantor to provide a case analysis and proposed budget for the California Litigation.  (*See*

4

Complaint, Ex. B, 4/1/2014 E-mail.)[2]

Following a decision of the California Supreme Court in an unrelated case, Defendant determined that it had no obligation under the Policy to provide a defense to Alternative in the California Litigation.[3]  By letter dated July 29, 2014, Defendant notified Alternative's coverage counsel, Mr. Little, of this decision, reminding Mr. Little that Defendant had agreed to provide a defense to Alternative under a reservation of its right to withdraw this defense, and stating that it was now exercising this right in light of its determination that none of the claims asserted by Epicor against Alternative triggered Defendant's duty to defend under the Policy. (*See* Defendant's Motion, Ex. 2, 7/29/2014 Letter.)[4]

Although Defendant initially processed and paid Plaintiff's invoices following the firm's March 2014 appearance as Alternative's counsel in the California Litigation, it ceased doing so upon advising Alternative in late July of

_____

[2]Mr. Cantor provided the requested case analysis and itemized budget on April 29, 2014.  (*See* Complaint, Ex. E, 4/29/2014 E-mail.)

[3]Several months before the California Supreme Court issued this decision in June of 2014, Defendant commenced a declaratory judgment action against Alternative in a California state court, seeking a judicial determination that it had no duty to defend Alternative in the California Litigation.  The state court stayed this action, and this stay apparently remains in effect.

[4]Defendant further advised Mr. Little that it "reserv[ed] the right to seek reimbursement of the defense fees and costs paid to date."  (*Id.* at 6.)

5

2014 that it was withdrawing its defense, and Plaintiff alleges that Defendant "has since refused to pay numerous of [Plaintiff's] invoices for services and disbursements in the [California] suit." (Complaint at ¶ 24.) Plaintiff therefore brought this suit in June of 2015, seeking to recover its unpaid fees from Defendant under the state-law theories of breach of implied contract, promissory estoppel, and breach of an obligation owed by Defendant to Plaintiff as an alleged third-party beneficiary of the insurance policy issued by Defendant to Plaintiff's client, Alternative.

## III. <u>ANALYSIS</u>

**A.    The Standards Governing Defendant's Motion**

Through the present motion, Defendant seeks the dismissal under Fed. R. Civ. P. 12(b)(6) of each of the three claims asserted in Plaintiff's complaint. When determining whether Plaintiff's claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim, the Court must construe the complaint in a light most favorable to Plaintiff and accept all well-pleaded factual allegations as true. *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

6

In addition, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.[5]

## B.   The Complaint Fails to Set Forth a Plausible Theory and Supporting Factual Allegations That Would Permit the Plaintiff Law Firm to Recover Its Fees from the Defendant Insurer.

In seeking the dismissal of Plaintiff's claims, Defendant begins with the fairly terse assertion that Plaintiff "has no standing" to assert state-law claims against Defendant as a vehicle for recovering its unpaid fees, where there is "no

---

[5]In light of the Court's conclusion, as set forth below, that Plaintiff's claims are subject to dismissal under Rule 12(b)(6), the Court need not address the standards governing Defendant's request for a transfer of venue.

7

attorney-client relationship" between the Plaintiff law firm and Defendant, and where Plaintiff's duties instead "run solely to" its client, Alternative.  (Defendant's Motion, Br. in Support at 12.)  While the parties largely eschew any further discussion of this question of "standing" in their briefs — and, indeed, Plaintiff does not even address this issue in its response to Defendant's motion — and while the Court does not necessarily concur in Defendant's characterization of this argument as a challenge to Plaintiff's "standing," the Court nonetheless concludes that Plaintiff's complaint fails to identify a viable basis for the Plaintiff law firm to recover its unpaid fees from the Defendant insurer, at least under the facts alleged in the complaint.

As Defendant states without contradiction, whether under California or Michigan law,[6] there is no attorney-client relationship between an insurer and a law

---

[6]Because this case lies within the Court's diversity jurisdiction, the choice-of-law rules of the forum state of Michigan govern the determination of the law that applies to Plaintiff's state-law claims.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941); *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000).  Upon extensively analyzing Michigan's choice-of-law rules in its motion, Defendant maintains that California law should govern here.  (*See* Defendant's Motion, Br. in Support at 5-12.)  Plaintiff, in contrast, conducts no such analysis in its response to Defendant's motion, but instead supports its arguments with citations to both Michigan and California law, in order "to remove any conflict of laws issue from [Defendant's] motion."  (Plaintiff's Response Br. at 6.)

The Court is persuaded by Defendant's thorough analysis, and thus concludes that California law governs here.  As indicated below, however, neither the California nor the Michigan courts have spoken directly to the issue that the Court finds largely dispositive

8

firm, like Plaintiff here, that has been retained by the insured party as independent counsel. *See Employers Insurance of Wausau v. Albert D. Seeno Construction Co.,* 692 F. Supp. 1150, 1156-57 (N.D. Cal. 1988) (applying California law); *Kirschner v. Process Design Associates, Inc.,* 459 Mich. 587, 592 N.W.2d 707, 711 (1999) (applying Michigan law). Indeed, as explained in *Employers Insurance of Wausau,* 692 F. Supp. at 1155-57, the very same body of California law that dictates the appointment of independent counsel where a conflict arises between an insurer and its insured — referred to as "*Cumis* counsel" after the decision in *San Diego Federal Credit Union v. Cumis Insurance Society, Inc.,* 208 Cal. Rptr. 494 (Cal. Ct. App. 1984), which recognized an insured's right to select independent counsel paid for by the insurer under these circumstances — necessarily contemplates that this independent counsel represents only the insured party, and not the insurer.[7] Because there is no attorney-client relationship between Plaintiff and Defendant, Plaintiff cannot seek to collect its unpaid fees from Defendant through a straightforward breach of contract claim brought by a law firm against its client.

In evident recognition of this, Plaintiff proposes three different state-law

here, so the choice between California and Michigan law seemingly makes little or no difference in the outcome of Defendant's motion. In any event, the Court generally cites to the law of both states in its ensuing analysis.

[7]The Plaintiff firm agrees that it is properly characterized as "*Cumis* counsel" within the meaning of this California law. (*See* Plaintiff's Response Br. at 3.)

9

avenues through which it can recover its fees from the Defendant insurer. For ease and clarity of analysis, the Court begins with the theory of recovery advanced in the third and final count of Plaintiff's complaint, which rests upon the premise that Plaintiff is an intended third-party beneficiary of the Policy issued by Defendant to its insured, Alternative. Under either California or Michigan law, a non-party to a contract may nonetheless enforce a contractual promise as a third-party beneficiary if this promise was intended to benefit the non-party. *See* Cal. Civ. Code § 1559; Mich. Comp. Laws 600.1405. The purported third-party beneficiary need not be specifically named in the contract, so long as this non-party "can show that he or she is a member of a class for whose benefit the contract was made." *Cargill, Inc. v. Souza,* 134 Cal. Rptr. 3d 39, 42 (Cal Ct. App. 2011); *see also Shay v. Aldrich,* 487 Mich. 648, 790 N.W.2d 629, 638 (2010).

Although the parties and the Court alike have failed to uncover any California or Michigan case law that squarely addresses the circumstances presented here, Defendant points to a number of cases from other jurisdictions holding that a law firm representing an insured party pursuant to an insurer's duty to defend is not a third-party beneficiary of the contract of insurance. In *Old Republic Insurance Co. v. Sidley & Austin,* 702 F. Supp. 207, 208 (N.D. Ill. 1988), for instance, the plaintiff insurer, Old Republic, issued an excess directors' and

10

officers' ("D & O") policy to the non-party trustees of the Bradley Trusts, providing

$3.5 million of liability coverage in excess of $5 million in coverage provided to the

trustees under a policy issued by the Federal Insurance Company ("Federal").

When two beneficiaries of the Bradley Trusts brought suit seeking the removal of

the trustees and a division of the trusts, the trustees obtained Federal's consent to

retain a law firm to serve as defense counsel in this litigation, and this initial law

firm was then replaced by the defendant firm shortly before trial, again with

Federal's consent.  Following the trial and the entry of a judgment awarding $3

million to the beneficiaries and authorizing the appointment of new trustees, Old

Republic and the trustees entered into an agreement calling for the insurer to

"satisfy all remaining obligations of the Trustees in the Bradley Trust Litigation,

including any unpaid portion of the [judgment], and any and all unpaid legal fees

and litigation expenses related to the Bradley Trust Litigation."  *Old Republic

Insurance,* 702 F. Supp. at 208-09.  The defendant law firm, Sidley & Austin

("Sidley"), billed Old Republic for nearly $1 million in legal fees and expenses, and

Old Republic responded by bringing a suit "to obtain (1) a judicial determination of

its obligation to Sidley for proper attorneys' fees under [its] agreement [with the

trustees], and (2) a declaration that Sidley's bill . . was excessive, unreasonable and

duplicative."  702 F. Supp. at 209.

11

The Sidley firm moved to dismiss the suit for lack of standing, contending that its bill for fees and expenses did not pose a sufficient threat to Old Republic's legal rights to warrant the declaratory relief sought by the insurer.  In response, Old Republic argued that both the policy it issued to the trustees and the agreement it reached with the trustees at the conclusion of the Bradley Trust litigation "create[d] a direct obligation to pay Sidley as a third party beneficiary of those contracts," so that its dispute with the law firm was sufficiently "in controversy" to confer standing under the federal Declaratory Judgment Act.  702 F. Supp. at 210.

Applying Illinois law, the court held that Sidley was not a third-party beneficiary under either the Old Republic policy or the insurer's agreement with the trustees.  Turning first to the insurance policy, the court found that the trustees were the sole intended beneficiaries of Old Republic's promise to pay the defense costs for covered claims asserted against the trustees, and that Sidley was only an incidental rather than an intended beneficiary of this promise:

> The trustees sought D & O insurance to protect themselves from the possibility that their actions might be questioned in court.  Not only does the potential liability that might be assessed against them represent a risk but merely going to court, with all the attendant costs including attorneys' fees, is a threat sufficiently real that D & O policies include defense costs within the definition of "loss."
>
> It is in this context that we conclude that Sidley was not a third party beneficiary to the Old Republic policy.  At the time the policy was purchased, the prospect of litigation was uncertain and the law

12

firm that would profit therefrom was presumably unknown. "No court has ever held — indeed the proposition seems never before even to have been advanced — that the lawyer may himself sue upon an insurance policy or any other agreement which obliges one contracting party to pay the other's legal fees." *Continental Casualty Company v. Marx,* 480 So.2d 177, 178-79 (Fla. App. 3d Dist. 1985), *review dismissed,* 484 So.2d 9 (1986). We announce, as did the court in *Continental Casualty,* that "[w]e shall not be the first." 480 So.2d at 179.

*Old Republic Insurance,* 702 F. Supp. at 210-11 (alteration in original).

The court likewise rejected Old Republic's contention that Sidley was a third-party beneficiary of the agreement reached between the insurer and the trustees at the conclusion of the Bradley Trust litigation:

It is wrong to say that the agreement's explicit requirement of the payment of attorneys' fees is alone sufficient to render Sidley a third party beneficiary. The requirement that the parties know of a third party's benefit is necessary but not sufficient. This is true even though the third party is identifiable at the time of execution. The crucial issue which separates "intended" from "incidental" beneficiaries is, by definition, intent — was the relevant provision inserted to benefit the law firms[?]

We think the answer is no. The payment of defense costs was addressed to benefit the trustees whose insurance (both primary and excess) covered attorneys' fees as a species of "loss." The agreement merely reiterated the policy coverage . . . . The . . . provision [calling for Old Republic to pay all outstanding legal fees and litigation expenses owed by the trustees] was included to give the trustees the benefit of their bargain — assurance that Federal and Old Republic would pay attorneys' fees as well as other "losses" under the D & O policy, in consideration of the insurance premium. That is why the agreement and the policies themselves expressly refer to attorney fees. We think this explanation, gleaned from a consideration of all the

13

contract terms and the circumstances surrounding the parties at the
time of the contract's execution . . . , best describes the intention of the
parties.

702 F. Supp. at 211-12 (footnote, internal quotation marks, and citations omitted).

Apart from this decision, the case law addressing the question of a law firm's
third-party beneficiary status under an insurance policy is hardly extensive — and,
as noted, seemingly includes no cases decided under either California or Michigan
law — but this case law fully comports with the result reached in *Old Republic
Insurance*.  In the Florida state court decision quoted in *Old Republic Insurance* for
the proposition that a lawyer's recovery under an insurance policy intended to cover
his client's legal fees would be unprecedented, the court reversed a judgment in
favor of an attorney, Richard Marx, who was retained by two individuals named as
defendants in a stockholders' derivative action.  *Continental Casualty,* 480 So.2d at
178.  In the court below, Marx had secured a judgment against Continental
Casualty, which insured the two individuals represented by Marx under a D & O
policy that covered the defense costs and fees incurred in the derivative action.  The
Florida appellate court found that Marx could not recover as a third-party
beneficiary under this insurance policy:

> It is far from being manifest from the nature or terms of the insurance
> contract, as is required to confer the status of a third party beneficiary
> upon [Marx], that the formal parties intended to benefit the insureds'
> attorney as the direct and primary object of the contract or amongst

14

> such objects.  To the contrary, it is perfectly apparent that Marx
> derived only the most attenuated incidental or consequential benefit
> from the enforcement of the policy and therefore may not maintain an
> action upon it.

*Continental Casualty,* 480 So.2d at 178 (internal quotation marks, citations, and alteration omitted);[8] *see also Silverman v. Hartford Accident & Indemnity Co. (In re Hronek),* 563 F.2d 296, 298-99 (6th Cir. 1977); *Yale Galanter, P.A. v. Johnson,* No. 06-60742, 2007 WL 2050990, at \*2-\*3 (S.D. Fla. July 16, 2007); *Chartis Specialty Insurance Co. v. Tri-Valley Corp. (In re Tri-Valley Corp.),* No. 12-12291, 2014 WL 6680354, at \*3 (Bankr. D. Del. Nov. 25, 2014); *In re Fritzsch Custom Builders, LLC,* 474 B.R. 515, 518 (Bankr. S.D. Ohio 2010); *In re Baltimore Emergency Services II,* 401 B.R. 209, 217-18 (Bankr. D. Md. 2008).

In accordance with this case law, the Court finds that the Plaintiff law firm cannot state a viable claim to recover its unpaid legal fees and expenses incurred in the California Litigation as a third-party beneficiary of the Policy issued by Defendant to Plaintiff's client, Alternative.  As in *Old Republic Insurance* and the other above-cited decisions, nothing in the pleadings or accompanying record in this case suggests that the Plaintiff law firm was an intended beneficiary of

---

[8]As discussed at greater length below, the court in *Continental Casualty* also found "no merit" in Marx's claim that he was entitled to recover "under an 'implied contract' for him to render services on behalf of" his clients' insurer.  480 So.2d at 179.

Defendant's promise in the Policy to pay Alternative's cost of defending against covered claims.  Rather, the Policy provisions imposing upon Defendant a duty to defend plainly were "included [in the Policy] to give [Alternative] the benefit of [its] bargain — assurance that [Defendant] would pay attorneys' fees as well as other losses under the . . . [P]olicy, in consideration of the insurance premium." *Old Republic Insurance,* 702 F. Supp. at 211 (internal quotation marks omitted).  As the courts have uniformly concluded under these circumstances, the Plaintiff firm was only an incidental, and not an intended, beneficiary of the duty to defend conferred under the Policy.  It follows, whether under California or Michigan law, that Plaintiff cannot enforce this obligation as a third-party beneficiary.  *See East Aviation Group, Inc. v. Airborne Express, Inc.,* 8 Cal. Rptr. 2d 355, 357-58 (Cal. Ct. App. 1992); *Brunsell v. City of Zeeland,* 467 Mich. 293, 651 N.W.2d 388, 390-91 (2002).

Turning next to Plaintiff's claims of breach of an implied contract and promissory estoppel, certain of the above-cited cases suggest a possible avenue through which the Plaintiff firm could pursue one or both of these theories of recovery against the Defendant insurer.  Most notably, in *Yale Galanter,* 2007 WL 2050990, at *2-*3, while the court held that the plaintiff law firm was not a third-party beneficiary of D & O insurance policies issued by the four defendant insurers

16

to the employer of the firm's client, Charles E. Johnson, Jr., it nonetheless allowed the law firm to pursue a breach of contract claim against one of the defendant insurers, based on a letter issued by this insurer approving of the firm to represent Johnson under its D & O policy. The court reasoned that this letter "appears to be an independent agreement to bestow some formal status" on the firm, and thus found that the plaintiff firm could seek to recover its fees from the insurer that issued this "specific engagement letter." *Yale Galanter,* 2007 WL 2050990, at *3.[9]

Likewise, in this case, Plaintiff's effort to recover its fees incurred in the California Litigation does not rest solely upon allegations that it is a third-party beneficiary of the insurance policy issued by Defendant to Plaintiff's client, Alternative. Rather, Plaintiff further alleges that an implied contract arose from the dealings of Plaintiff and Defendant, or that, alternatively, Defendant made a promise to pay the Plaintiff law firm for its services that is enforceable under a theory of promissory estoppel. In its response to Defendant's motion, Plaintiff argues that it has sufficiently pled the elements of these two claims to withstand Defendant's Rule 12(b)(6) challenge.

The Court disagrees. Turning first to Plaintiff's claim of breach of an

---

[9]The court later granted summary judgment in favor of the insurer, however, and the Eleventh Circuit affirmed this ruling. *See Yale L. Galanter, P.A. v. Johnson,* No. 08-10872, 293 F. App'x 750 (11th Cir. Sept. 17, 2008).

implied contract, Plaintiff alleges in support of this claim (i) that on March 6, 2014, "Alternative's coverage counsel, Eric R. Little, Esq., notified [Defendant's] counsel . . . by letter that Alternative desired to replace [its existing independent counsel] with Mark A. Cantor, Esq., of [the Plaintiff firm] as its defense counsel," (ii) that "[i]n reliance on [Defendant's] agreement to permit the substitution of new defense counsel," the Plaintiff firm "entered into an engagement agreement with Alternative," moved for the substitution of counsel in the California Litigation, and entered its appearance in that suit, (iii) that on April 1, 2014, a representative of the Defendant insurer sent an e-mail to Mr. Cantor of the Plaintiff firm "confirming [Defendant's] acceptance of [Plaintiff's] representation of Alternative" and attaching Defendant's "billing and litigation guidelines," and (iv) that Defendant thereafter "began processing and paying [Plaintiff's] invoices" for its legal services, until Defendant "summarily withdrew" its defense of the California Litigation on or around August 7, 2014.  (Complaint at ¶¶ 13-23.)  According to Plaintiff, this alleged course of dealings gave rise to an implied contract that "required [Plaintiff] to provide legal services in defense of [Defendant's] insured, Alternative," in the California Litigation, and in turn "required [Defendant] to compensate [Plaintiff] according to the agreed rates" set forth in the April 1, 2014 e-mail from Defendant's representative to Mr. Cantor.  (*Id.* at ¶¶ 27-30.)

18

These allegations fail on two grounds to state a viable claim of breach of an implied contract.  First, Plaintiff's allegations cannot be squared with the exhibits accompanying its complaint.  While Plaintiff suggests in its complaint that Alternative, through its coverage counsel Eric Little, expressed its "desire[] to replace" its existing counsel with the Plaintiff firm, and that Defendant "agree[d]" to this substitution, (*id.* at ¶¶ 13-14), the March 6, 2014 letter from Alternative's coverage counsel to Defendant actually states that "Alternative has retained new defense counsel to replace" its existing counsel, and that "Alternative will now be represented by" the Plaintiff firm, (*see* Complaint, Ex. A, 3/6/2014 Letter at 1). More generally, Mr. Little stated that Defendant was "permitted to contact [the Plaintiff firm] with issues relating to" the California Litigation, but he emphasized that Defendant should "continue to direct all insurance coverage related correspondence to" his firm.  (*Id.* at 1-2.)

Accordingly, to the extent that Plaintiff alleges that the parties engaged in a course of "dealings" that reflected "the existence and terms of" an implied contract calling for Plaintiff to provide legal services to Alternative in the California Litigation, (*id.* at ¶¶ 27-28), the record accompanying Plaintiff's complaint defeats these allegations.  The March 6, 2014 letter from Alternative's coverage counsel expressly informed Defendant that Alternative ***had replaced*** its existing counsel

19

with the Plaintiff firm, and that Alternative was "now . . . represented by" Plaintiff. (Complaint, Ex. A, 3/6/2014 Letter at 1.)  Nothing in this letter invited Defendant to agree to this substitution of counsel; rather, it was presented as a fait accompli.  And even if Defendant might have understood this letter as inviting its acceptance, Plaintiff does not allege that Defendant responded to the letter in accordance with this understanding, nor do any of the exhibits accompanying the complaint support this reading of the March 6 letter.

Similarly, while Plaintiff alleges that it took various actions — including entering into an engagement agreement with Alternative, moving for substitution of counsel in the California Litigation, and entering an appearance in that suit — "[i]n reliance on [Defendant's] agreement" to permit the Plaintiff firm to substitute for Alternative's prior counsel, (Complaint at ¶¶ 14-16), each of these events occurred *before* Defendant took any action or made any statement that could possibly evidence such an "agreement."  In particular, although Plaintiff points to an April 1, 2014 e-mail from Defendant's representative as allegedly "confirming [Defendant's] acceptance of [Plaintiff's] representation of Alternative," (*id.* at ¶ 17), the complaint fails to identify any basis for concluding that Defendant had previously agreed to this arrangement, such that the April 1 e-mail could be viewed as "confirming" this understanding.  Thus, while the Court recognizes that it must

20

accept the factual allegations of Plaintiff's complaint as true, this rule does not apply to (i) legal conclusions masquerading as factual allegations, such as Plaintiff's assertions that Defendant agreed to Plaintiff's substitution as Alternative's counsel or that Defendant's April 1, 2014 e-mail "confirm[ed]" this agreement, *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949, or (ii) allegations that are contradicted by exhibits accompanying the complaint, such as Plaintiff's assertion that Mr. Little's March 6, 2014 letter expressed Alternative's "desire[] to replace" its existing counsel, *see Thompson v. Illinois Department of Professional Regulation,* 300 F.3d 750, 754 (7th Cir. 2002).

Next, Plaintiff's claim of an implied contract is rendered implausible by the surrounding context, particularly when viewed in light of the California law governing an insurer's obligation to provide independent counsel to represent the insured's interests once a conflict arises between the insurer and the insured.  As observed earlier, and as both parties recognize, once Defendant advised Alternative that it was providing a defense to Alternative in the California Litigation subject to a reservation of rights, this triggered a conflict of interest between insurer and insured that, under California law, obligated Defendant to cover the reasonable cost for Alternative to retain independent counsel.  *See Employers Insurance of Wausau,*

21

692 F. Supp. at 1154-55.[10]  The parties likewise agree that in accordance with this requirement of California law, Alternative initially retained Clark Hill PLLC to serve as its independent counsel in the California Litigation, and that the Plaintiff firm then entered its appearance in place of Clark Hill as independent counsel for Alternative.  Finally, Defendant acknowledged in a July 30, 2013 letter to Alternative that due to its conflict with Alternative arising from its reservation of its right to withdraw its defense of Alternative in the California Litigation, Alternative was authorized under California law to "select independent counsel" that would be compensated by Defendant in accordance with the rates paid by Defendant "in the ordinary course of business in the defense of similar actions."  (Defendant's Motion, Ex. 1, 7/30/2013 Letter at 6.)

By the very nature of this California law requirement of ***independent*** counsel, Plaintiff cannot state a breach of implied contract that is "plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974, such that it can withstand a challenge under Rule 12(b)(6).  As independent counsel, the Plaintiff firm represented "solely the insured," Alternative, and not the Defendant insurer. *Employers Insurance of Wausau,* 692 F. Supp. at 1157.  It would be antithetical to

---

[10]As noted earlier, the California courts refer to this independent attorney as "*Cumis* counsel."

22

this state-law right to independent counsel to grant the Defendant insurer the power

to agree to — and, by corollary, to veto — Alternative's selection of a law firm to

serve as its independent counsel in the California litigation.  And, of course, the

March 6, 2014 letter from Alternative's coverage counsel to Defendant confirms

this understanding of Alternative's right to select independent counsel, as Mr. Little

informed Defendant that Alternative "ha[d] retained new defense counsel to

replace" the Clark Hill firm, (Complaint, Ex. A, 3/6/2014 Letter), without in any

way indicating that Alternative sought Defendant's concurrence in this decision.

Similarly, as the court explained in *Continental Casualty,* 480 So.2d at 179, where

counsel retained by the insured represents interests that are antagonistic to those of

the insurer, there can be no implied contract between the insured's counsel and the

insurer.  Accordingly, Plaintiff cannot plausibly allege that an implied contract was

formed by virtue of Defendant's offer and Plaintiff's acceptance of the role as

Alternative's independent counsel.

Plaintiff nonetheless attempts to rescue its implied contract claim from

dismissal by arguing that even if Defendant did not offer the role of independent

counsel to the Plaintiff firm — and even if the exhibits accompanying Plaintiff's

complaint belie any claim that it did so — Defendant should be viewed as having

"assented to the formation of a contract by remaining silent while [the Plaintiff

23

firm] represented Alternative" and by paying Plaintiff for its legal services, at least initially.  (Plaintiff's Response Br. at 8-9.)  Again, however, this theory of contract formation is not plausible under the circumstances.  As explained, Defendant was in no position to voice an objection to Alternative's selection of Plaintiff as its independent counsel.  Likewise, while Defendant paid one or more of Plaintiff's invoices, (*see* Complaint at ¶ 22), these payments cannot be viewed as a volitional act of contract acceptance, where Defendant was obligated under California law to compensate the independent counsel retained by Alternative.  Consequently, although Plaintiff's complaint recites the elements of a claim that Defendant breached an implied contract, Plaintiff has failed to "plead[] factual content" that would permit "the reasonable inference that [Defendant] is liable" under this theory of recovery.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

Little more need be said about Plaintiff's claim of promissory estoppel, as it suffers from essentially the same defects.  As a purely factual matter, Plaintiff cannot plausibly allege that the actions it took in March of 2014 — including entering into an engagement agreement with Alternative, moving for substitution of counsel in the California Litigation, and filing an appearance in that suit — were done "[i]n reliance on" Defendant's agreement or assurance that the Plaintiff firm would be allowed to represent Alternative in the California Litigation, (*see*

24

Complaint at ¶¶ 14-16), where the first correspondence from Defendant reflecting its purported "acceptance" of Plaintiff's representation of Alternative was an e-mail dated April 1, 2014, (*see id.* at ¶ 17.  In addition, while Plaintiff alleges that it acted in reliance on Defendant's "promise to pay [the Plaintiff firm] for its services" in representing Alternative in the California Litigation, (*id.* at ¶¶ 36-39), the Court already has explained that it is not plausible to characterize Defendant as having promised to make payments that were mandated under California law. Accordingly, Plaintiff's claim of promissory estoppel is subject to dismissal.

## IV.  **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's July 22, 2015 motion to dismiss for failure to state a claim or, in the alternative, to transfer venue (docket #10) is GRANTED, to the extent that Defendant seeks the dismissal of Plaintiff's complaint, and is otherwise DENIED AS MOOT.

s/Gerald E. Rosen
United States District Judge

Dated:  September 30, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2016, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135